## PEOPLE ex rel. LIGHT et al. v. SKINNER.

(Supreme Court, Appellate Division, Third Department. January 11, 1899.)

SCHOOL DIRECTORS—REMOVAL—VIOLATION OF DUTY—STATE SUPERINTENDENT.
    The president and one member of a school board adjourned a meeting at a few minutes after the hour set for the meeting, though they knew that the other members were at the entrance of the building prepared to attend, and as they passed out they notified the others of the adjournment, but the latter announced that the members were present and that a meeting would be held, and they proceeded to the hall and held the meeting. It was customary to assemble the meeting 15 to 30 minutes after the time set. *Held* that, there being no evidence of a wrongful purpose, it did not justify the removal from office of the directors holding the meeting, conceding that under Consol. School Laws, tit. 1, § 13 (Laws 1894, c. 556), the state superintendent could remove them for a willful violation or neglect of duty.

Certiorari by the people, on the relation of Frederick D. Light and others, against Charles R. Skinner, state superintendent of public instruction, to review the determination of defendant in removing relators as school directors. Determination reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Rogers, Locke & Milburn (John G. Milburn, of counsel), for relators.
Stearns & Warner (Lester F. Stearns, of counsel), for defendant.

PER CURIAM. In Re Light, 30 App. Div. 50, 51 N. Y. Supp. 743, this court held that the removal of the relators as members of the board of education of the town of Dunkirk, county of Chautauqua, N. Y., by the state superintendent of public instruction, should be deemed as made under the powers conferred upon him by section 13, tit. 1, of the consolidated school law (Laws 1894, c. 556), under which the superintendent, in making the removal, assumed to act. The court also determined that the act of the state superintendent in removing the relators was reviewable by this court on certiorari. We are therefore called upon to consider the evidence on which the state superintendent acted in making the decision brought before us for review, for the purpose of determining whether it was sufficient to sustain the order he made. We are authorized to consider "whether there was any competent proof of all the facts necessary to be proved in order to authorize the making of the determination; if there was such proof, whether there was, upon all the evidence, such a preponderance of proof against the existence of any of those facts that the

verdict of a jury affirming the existence thereof, rendered in an action in the supreme court, triable by a jury, would be set aside by the court, as against the weight of evidence." Code Civ. Proc. § 2140; People v. Commissioners of Taxes and Assessments, 142 N. Y. 348–352, 37 N. E. 116; People v. French, 119 N. Y. 502, 23 N. E. 1061.

In our consideration of the case, we shall assume that the state superintendent was authorized, under the provisions of section 13, tit. 1, supra, to remove the relators for any willful violation or neglect of duty, as claimed by the learned counsel for the respondents. We shall also assume that the relators had no power to hold a meeting of the board of education of the town of Dunkirk on the evening of June 19, 1897, after the president had announced an adjournment thereof; no quorum being present in the room appointed for such meeting at the hour for which it was called, or when such announcement was made. It is proper to bear in mind the established doctrine that, where the power to remove an officer is conferred by authority of a statute, it must be strictly construed and its provisions accurately followed. 19 Am. & Eng. Enc. Law, 562b; People v. Burnside, 3 Lans. 74–76; Turnpike Co. v. McKean, 6 Hill, 616–620. It will not be doubted, as claimed by counsel, that a power to remove officers who have been elected by the citizens of the town in which they live to an "honorable and responsible office" for a term of years should not be exercised except in a reasonably clear case, and with great caution. The words "willful violation of duty," as used in section 13, tit. 1, of the consolidated school act, as applicable to acts for which members of a board of education may be removed by the state superintendent, must be construed to mean acts intentionally done, with a wrongful purpose. The question, therefore, to be determined is, did the evidence submitted to the state superintendent sustain his conclusion that the relators had been guilty of a willful misconduct or neglect of duty,—in other words, intentional wrongdoing, as charged in the application of Mr. Williams? No oral testimony was taken before the commissioner, the only evidence before him being the application of Mr. Williams and the answer of the appellants. By these papers it appears that a meeting of the members of the board of education of the town of Dunkirk was called for the evening of December 19, 1897, at 7:30 o'clock. At that time the president, Mr. Williams, and Mr. Mulholland, two of the members of the board, were present in the room where the meetings were held. Another member, Mr. Light, secretary of the board, had been in the room, prepared his papers for the meeting, and stepped out, leaving his hat and his papers. At 7:37 o'clock, on motion of Mr. Mulholland, the meeting was adjourned, at the time Mr. Light and two other members of the board, Parker and Van Devort, being at the entrance of the building prepared to attend the meeting. Those three, with Mr. Williams and Mr. Mulholland, would have constituted a quorum. The answer also set forth that when the adjournment was declared the three remaining members of the board were either at or near the front entrance of the building, prepared to attend the meeting; that it had not been the custom to call meetings of the members of the board to order at the precise time mentioned in the notice thereof, but from a quarter to half an hour

later. The president did not call or send for the three members of the board who he knew were in attendance at the entrance to the building, but, as stated, at 7:37 he and Mr. Mulholland adjourned the meeting, and as they passed the entrance of the building notified the other members of the adjournment. Mr. Light, a member and the secretary, thereupon stated to Messrs. Williams and Mulholland that all the members of the board of education were there present, and that the meeting called would be held. The relators, constituting a quorum of the members of said board, thereupon proceeded to the room in the building where meetings were held, and proceeded to organize a meeting, for which act they were removed from office. The above is substantially the state of facts shown by the papers presented to the state superintendent. He might properly therefrom have reached the conclusion that the relators, in attempting to hold the meeting after the president had announced an adjournment, were in error; that said adjournment was authorized, and, such being the case, the subsequent meeting attempted to be held by the relators was unlawful. But such a conclusion would not justify a removal of the relators. An act resulting from an error of judgment, a mistake as to the law, or a misapprehension on the part of the relators was no ground for their removal. To justify the action of the state superintendent the evidence before him should have made it appear that the appellants acted with a wrongful purpose, knowing or believing that such action was unlawful. After a careful consideration of the papers on which the decision of the state superintendent was based, without deeming it necessary to enter into an extended discussion of the matter, we are of the opinion that, while they may have proved a mistake on the part of the appellants, they failed to show such willful misconduct or neglect of duty as justified the decision we are called upon to review. These papers show the mere fact that, at the time in question, the relators, claiming that the adjournment by the president and Mr. Mulholland was unauthorized, proceeded to hold a meeting, and that in so acting they were in error; that they made a mistake. The evidence did not show that the appellants knew or believed that they had no right to hold the meeting. There was no presumption that the error of the relators resulted from a willful wrongful purpose, or that they acted with a wrongful intent. A contrary presumption—innocence of a wrongful intent—should be entertained. This presumption of innocence is strengthened by the fact that the relators could have had no object in holding the meeting in question unless they believed they had the legal right to do so, as they must have known that if it was unauthorized their proceedings thereat would necessarily be void and of no effect. The relators constituted a majority of the members of the board of education. They were actually present at the building where the members were accustomed to assemble, for the purpose of attending the meeting. There was a custom not to assemble at the exact hour for which the meeting was called. In other words, by the custom of the board, a call for 7:30 in the evening meant that the meeting would be held at that time or within a reasonable time thereafter. Considering the custom and the circumstances of the adjournment, as above stated, it is not strange that the relators made

the mistake they did, and believed that the adjournment made by two members of the board was unauthorized, and proceeded to organize a meeting. They might naturally suppose that it was the duty of the president, knowing that at least three of the members were within the building, to notify them of his proposed action. Under such circumstances it should not be inferred from the mistake into which the relators fell that they were guilty of willful misconduct, but rather that they acted honestly, believing that they had a legal right to hold their meeting. Without deeming it necessary to further discuss the facts as set forth in the application and answer on which the state superintendent assumed to remove the relators, we think the presumption should be entertained, in the absence of any satisfactory evidence to the contrary, that the appellants in holding the meeting of June 19, 1897, for the holding of which they were removed, although acting under a misapprehension, believed they were authorized to take the course they did, and their act cannot be deemed a willful violation or neglect of duty. The result above arrived at renders it unnecessary to consider other questions in the case. The determination of the state superintendent should be reversed, with $50 costs and disbursements, and those of the relators whose term of office has not expired should be reinstated in office.